# In the United States Court of Federal Claims

BID PROTEST
No. 19-676C
Filed Under Seal:  August 1, 2019
Reissued: August 27, 2019[*]

|  |  |  |
|---|---|---|
| WELLPOINT MILITARY CARE CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | Post-Award Bid Protest; Motion For Judgment Upon The Administrative Record; RCFC 52.1; Best Value Determination; Trade-Off Analysis. |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| v. | ) ) | |
| OPTUM PUBLIC SECTOR SOLUTIONS, INC., | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

*Mark D. Colley*, Attorney of Record, *Kara L. Daniels*, Of Counsel, *Thomas McSorley*, Of Counsel, *Michael E. Samuels*, Of Counsel, *Alexandra L. Barbee-Garret*, Of Counsel, Arnold & Porter Kaye Scholer LLP, Washington, DC, for plaintiff.

*Steven M. Mager*, Senior Trial Counsel, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Richard A. Bechtel*, Of Counsel, *Bridget E. Grant*, Of Counsel, United States Department of Veterans Affairs, for defendant.

---

[*] This Memorandum Opinion and Order was originally filed under seal on August 1, 2019 (docket entry no. 47).  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on August 27, 2019 (docket entry no. 57) proposing certain redactions which the Court has adopted.  And so, the Court is reissuing its Memorandum Opinion and Order, dated August 1, 2019, with the agreed-upon redactions indicated by three consecutive asterisks within brackets ([* * *]).

*Jason A. Carey*, Counsel of Record, *J. Hunter Bennett*, Of Counsel, *Kayleigh M. Scalzo*, Of Counsel, *Kevin T. Barnett*, Of Counsel, *Brooke G. Stanley*, Of Counsel, Covington & Burling, LLP, Washington, DC, for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.      INTRODUCTION

Plaintiff, WellPoint Military Care Corporation ("WellPoint,"), brings this post-award bid protest action challenging the United States Department of Veterans Affairs' ("VA") decision to award a contract to develop and manage the VA's program to provide veterans with access to community-based healthcare (the "Contract") to Optum Public Sector Solutions, Inc. ("Optum"). The parties have filed cross-motions for judgment upon the administrative record on the issues of whether:  (1) the VA improperly applied an unstated evaluation criteria in evaluating the size of existing provider networks; (2) the VA treated offerors unequally when evaluating the solicitation's Corporate Experience/Capability Subfactor; (3) the VA's best value determination and trade-off analysis were flawed; and (4) WellPoint is entitled to injunctive relief.  *See generally* Pl. Mem.; Def. Mot.; Def.-Int. Mot.

For the reasons discussed below, the Court:  (1) **DENIES** WellPoint's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Optum's cross-motions for judgment upon the administrative record; and (3) **DISMISSES** the complaint.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

In this post-award bid protest matter, WellPoint challenges the VA's decision to award a contract to develop and manage the VA's Region 3 Community Care Network ("CCN"), which provides veterans with access to community-based healthcare, to Optum.  Compl. at ¶¶ 1, 2.  As relief, WellPoint requests that the Court:  (1) declare that the VA's evaluation process was arbitrary, capricious and unreasonable; (2) issue preliminary and permanent injunctive relief

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); WellPoint's memorandum in support of its motion for judgment upon the administrative record ("Pl. Mem."); and the government's and Optum's respective cross-motions for judgment upon the administrative record ("Def. Mot." and "Def.-Int. Mot.").  Except where otherwise noted, the facts cited herein are undisputed.

enjoining performance by Optum; and (3) require the VA to either award the Contract to WellPoint, or to reevaluate proposals. *Id.* at 39.

### 1.    The Solicitation

As background, the VA issued Request for Proposal No. VA791-16-R-0086 (the "Solicitation") seeking proposals to provide medical, surgical, complementary and integrative healthcare services, durable medical equipment, pharmacy, and dental services to the VA's CCN, on December 28, 2016.  AR Tab 123 at 40977, 41032-33.  The CCN is divided into four geographic regions.  AR Tab 7 at 104-05.  Region 3, which is the subject of this protest, consists of the following states and territories:  Oklahoma, Arkansas, Louisiana, Tennessee, Mississippi, Alabama, Georgia, South Carolina, Florida, Puerto Rico, and the United States Virgin Islands. AR Tab 123 at 40981-82.

The Solicitation contemplates multiple, single-award, firm-fixed-price indefinite-delivery, indefinite quantity contracts.  *Id.* at 41174.  The VA intends to award one or more contracts resulting from the Solicitation and a maximum of one contract per region.  *Id.* at 41152.

With regards to the evaluation of responsive proposals, the Solicitation provides that the VA will consider the following factors and subfactors:

- Factor 1: Technical
    - Subfactor 1: Network Management and Claims Adjudication
    - Subfactor 2: Management Approach
    - Subfactor 3: Corporate Experience/Capability
- Factor 2: Past Performance
- Factor 3: Socioeconomic Concerns
- Factor 4: Price

*Id.* at 41163-64.  The Solicitation further provides that the VA will award the Contract to the offeror whose proposal constitutes the best value to the government, using a trade-off analysis. *Id.* at 41163.  In addition, the Solicitation provides that the Technical Factor is more important than the Past Performance Factor, which is more important than the Socioeconomic Concerns Factor.  *Id.* at 41164.  With regards to the Technical Factor, the Solicitation also provides that the Network Management and Claims Adjudication and Management Approach Subfactors are of equal importance, and that these subfactors are more important than the Corporate Experience/Capability Subfactor.  *Id.*  Lastly, the Solicitation provides that the three non-price

factors, when combined, are significantly more important than Price.  *Id.*

> With regards to the Technical Factor, the Solicitation further provides that:

> For this factor, each region will be evaluated independently.  Elements within the technical subfactors will be evaluated as stated herein.  These elements will not each be assigned an adjectival rating, but will be considered in the adjectival rating assigned to the corresponding subfactor.

*Id.* at 41165.  Specifically with regards to the evaluation of the Network Management and Claims Adjudication Subfactor, the Solicitation provides that:

> The proposed network management approach requested in Solicitation Section E.2.8.1 will be evaluated for feasibility to meet [the Performance Work Statement] requirements listed in E.2.8.1.  Feasible means 'capable of being done or carried out'.

*Id.*  Section E.2.8.1 of the Solicitation lists eight elements that the VA will consider when assigning the adjectival ratings for this subfactor.  *Id.* at 41156-57.  Specifically relevant to this dispute, Section E.2.8.1.1 of the Solicitation provides that the offeror must differentiate between existing network capacity and targeted network capacity.  *Id.* at 41157.  Section E.2.8.1.3 of the Solicitation also provides that offerors should:

> Include in the Technical Volume the number of current unique providers within your networks by CCN Region, by State, by county by VA [Veterans Integrated Service Network], by VA Station Number and each [National Provider Identifier] with specialty designation.

*Id.*

> With regards to evaluation of the Management Approach Subfactor, the Solicitation further provides that "[t]he proposed management approach requested in Solicitation Section E.2.8.2 will be evaluated for feasibility to meet [the Performance Work Statement] requirements listed in E.2.8.2."  *Id.* at 41165.  The Solicitation provides with respect to the Corporate Experience/Capability Subfactor that:

> The proposal content submitted in accordance with E.2.8.3 shall be evaluated to determine whether the organization has the infrastructure, experience and capabilities to manage a large, complex and comprehensive healthcare network inclusive of medical and dental providers, pharmacy benefits management, and claims adjudication.

*Id.*  Section E.2.8.3 of the Solicitation also lists four elements that the VA will consider when

assigning the adjectival ratings for this subfactor. *Id.* at 41158-59. Specifically, Section E.2.8.3.1 instructs offerors to "[p]rovide a general corporate background, experience, and qualifications of the Offeror." *Id.* at 41158. Section E.2.8.3.2 of the Solicitation further instructs offerors to:

> Provide a general corporate background, experience, and qualifications of the organization to include any offeror's joint venture partner(s) or affiliate(s)/parent organization(s) if the information provided shows that the workforce, management, facilities or other resources of the joint venture partner(s), affiliate(s)/parent organization(s) will bear on the likelihood of successful performance by the Offeror.

*Id.*

With regards to the evaluation of responsive proposals under the Past Performance Factor, the Solicitation provides that the VA will evaluate offerors based upon the relevancy of their past performance experience and the confidence the agency has that the offerors' past performance will lead to successful performance on the Contract. *Id.* at 41165-66. The Solicitation states regarding the evaluation of the Socioeconomic Concerns Factor that, "[e]valuation preference will be given to those offerors having [Service Disabled Veteran-Owned Small Business] or [Veteran Owned Small Business] socio-economic status." *Id.* at 41160. In this regard, the Solicitation requires the VA to assign each proposal a rating of "full credit," "partial credit," "minor credit," or "no credit" for this factor. *Id.* at 41166-67.

Lastly, with regards to Price, the Solicitation provides that "[t]he contracting officer may determine the proposed prices fair and reasonable based solely on an analysis of the cumulative weighted score in accordance with this section." *Id.* at 41167. In this regard, the Solicitation provides that the weighted score is based upon the Independent Government Cost Estimate of all contract line item numbers. *Id.* And so, the Solicitation also provides that "a higher cumulative weighted score will be considered more favorably than a lower score." *Id.*

## 2.     The Evaluation Of Proposals

The VA received responsive proposals from three offerors—WellPoint, Optum, and TriWest Healthcare Alliance Corp. ("TriWest")—on October 9, 2018. *See generally* AR Tabs 76-78. Thereafter, the VA evaluated each proposal based upon the four evaluation factors outlined in the Solicitation. *See generally* AR Tabs 79-82. The VA rated the proposals

submitted by WellPoint and Optum as follows:

| Factor | WellPoint | Optum |
|---|---|---|
| **Technical** | Acceptable | Good |
| **Subfactor 1**: Network Managements and Claims Adjudication | Good | Good |
| **Subfactor 2**: Management Approach | Acceptable | Good |
| **Subfactor 3**: Corporate Experience/Capability | Acceptable | Outstanding |
| **Past Performance** | Somewhat Relevant/ Satisfactory Confidence | Somewhat Relevant/ Satisfactory Confidence |
| **Socioeconomic Concerns** | Partial and Minor Credit | Partial and Minor Credit |
| **Price** | 0.24398 | 0.18968 |

AR Tab 84 at 17042, 17079.

With regards to WellPoint's proposal, the VA's Technical Evaluation Team ("TET") assigned five strengths and one weakness to WellPoint's proposal under the Network Management and Claims Adjudication Subfactor. AR Tab 87 at 17094. The administrative record shows that the weakness assigned to WellPoint's proposal was because the proposal "assumes that [the] VA will provide a monthly VA Capacity file." AR Tab 79 at 16165. The five strengths assigned under this subfactor were based upon WellPoint's: (1) approach to identifying high performing providers; (2) ability to access an existing system with proven benefits; (3) in-house dental network, DeCare; (4) proactive provider verification outreach program to ensure accurate and complete data is collected; and (5) approach to implement the proactive provider verification outreach program. *Id.* at 16185; 16187; 16201; 16232. The VA's TET also evaluated WellPoint's proposal for network feasibility and determined, among other things, that:

> [WellPoint's] use of its [Network Development Project Plan] with the VA CCN network development process, plus geo-mapping to support adequacy reviews, are collectively feasible because the approach incorporates VA drive times, and appointment availability standards to meet [the] VA CCN requirements.

*Id.* at 16170. And so, the VA's TET determined that:

> [WellPoint's] proposal regarding Network Management and Claims Adjudication is rated "Good" and indicates a thorough approach and understanding of the requirements. . . . [T]he risk of unsuccessful performance is low to moderate.

*Id.* at 16165.

With regards to Optum's proposal, the VA's TET assigned Optum's proposal six strengths and no weaknesses under the Network Management and Claims Adjudication Subfactor. *Id.* at 16339. The strengths assigned to Optum's proposal were based upon Optum's: (1) number of providers in its commercial network in Region 3; (2) ability to leverage its existing network for veterans to [* * *]; (3) [* * *]; (4) approach to [* * *]; (5) recognition that [* * *]; and (6) use of [* * *]. *Id.* at 16346; 16349-50; 16354-55; 16385. The TET also evaluated Optum's proposal for network feasibility and determined that:

> Optum's approach is feasible because it demonstrates an understanding of the unique CCN healthcare challenges by leveraging geospatial analysis for drive time accessibility, appointment availability, and catchment area analysis to build the CCN healthcare network.

*Id.* at 16345. And so, the TET concluded that "Optum's proposal regarding Network Management and Claims Adjudication is rated 'Good' and indicates a thorough approach and understanding of the requirements." *Id.* at 16340.

With regards to the VA's evaluation of WellPoint's proposal under the Corporate Experience/Capability Subfactor, the VA's TET assigned WellPoint's proposal four strengths and one weakness under this subfactor. AR Tab 87 at 17094. Specifically, the VA's TET assigned a weakness to WellPoint's proposal because WellPoint had only three years of corporate experience and "without its affiliates . . . [WellPoint] has inadequate corporate depth to manage a large, complex and comprehensive healthcare network increasing the risk of unsuccessful performance." AR Tab 79 at 16331. The VA's TET also assigned WellPoint's proposal four strengths under this subfactor, based upon its parent company's organizational model and the corporate experience of WellPoint's affiliates. *Id.* at 16335-38; AR Tab 87 at 17094. And so, the VA's TET rated WellPoint's proposal as "Acceptable" and determined that the proposal "indicates adequate corporate experience and capability" and determined that the risk of unsuccessful performance was "no worse than moderate." AR Tab 79 at 16167-68.

With regards to the evaluation of Optum's proposal under the Corporate Experience/ Capability Subfactor, the VA's TET assigned Optum's proposal seven strengths and no weaknesses for this subfactor.  AR Tab 87 at 17094.  Specifically, the VA noted that Optum's proposal received at least one strength for each element of Section E.2.8.3 of the Solicitation. AR Tab 79 at 16342.  The strengths assigned to Optum under this subfactor were based upon its general corporate background; its organizational infrastructure; and the experience of its affiliates in the areas of pharmacy benefits and dental network services.  *Id.* at 16476-82.  And so, the VA's TET rated Optum's proposal as "Outstanding" under the Corporate Experience/ Capability Subfactor and determined that the risk of unsuccessful performance is low.  *Id.* at 16343.

Lastly, with respect to the Price Factor, the VA's Price Evaluation Team ("PET") determined that WellPoint's cumulative weighted price score was 24.398% less than what the VA expected to pay, while Optum's cumulative weighted price score was 18.968% less than what the VA expected to pay for the Contract.  AR Tab 82 at 16929, 16931; *see also* AR Tab 87 at 17099.[2]

### 3.    Trade-Off Analysis

The VA's Source Selection Advisory Council ("SSAC") conducted a trade-off analysis of the evaluated proposals.  AR Tab 84 at 17080-81.  During the trade-off analysis, the SSAC "considered the relative merit based on a qualitative assessment of the competing proposal's characteristics, going well beyond a simple count of the relative strengths and weaknesses assigned during the evaluation process."  *Id.* at 17081.  And so, the SSAC noted the following discriminators for offerors in connection with proposals for the Contract:

- Factor 1, Subfactor 1, related to Optum's healthcare network

---

[2] The VA's TET also evaluated WellPoint's and Optum's proposals under the Solicitation's Management Approach Subfactor under the Technical Factor.  With regards to WellPoint's proposal, the VA's TET rated WellPoint's proposal as "Acceptable" under the Management Approach Subfactor.  AR Tab 79 at 16167.  With regards to Optum's proposal, the VA's TET rated Optum's proposal as "Good" under the Management Approach Subfactor.  AR Tab 79 at 16342.  With regards to WellPoint's and Optum's Past Performance, the VA's Past Performance Evaluation Team determined that both offerors' past performance is "Somewhat Relevant" and that the VA has "Satisfactory Confidence" that both offerors can successfully perform the Contract.  AR Tab 80 at 16680, 16695.  With regards to the Socioeconomic Concerns Factor, the VA determined that both offerors deserved partial credit and minor credit for their proposals.  AR Tab 81 at 16908, 16921.

- Factor 1, Subfactor 2, related to TriWest's healthcare delivery
- Factor 1, Subfactor 3, related to Optum's Corporate Experience
- Factor 2, related to TriWest's past performance.

*Id.* at 17080-81.  The SSAC also compared the offeror's cumulative weighted price scores and determined that "WellPoint's score represents . . . a 5.430% additional cost savings over what Optum proposed." *Id.* at 17080.  But, the SSAC determined that, "[b]ased on its technical advantages, Optum's superior network and corporate experience mitigate the cost differential between its proposal and the lowest priced proposal from WellPoint." *Id.* at 17081.  And so, the SSAC concluded that:

> Based on the review of the source selection evaluation, [the] SSAC performed a tradeoff between price and non-price factors and determined that Optum's proposal is superior under the non-price factors and is worth a higher price.  Therefore, [the] SSAC determined [that] Optum's proposal represents the best value to [the] VA and recommends Optum be awarded the Community Care Network contract in Region 3.

*Id.*

### 4.    Best Value Determination And Award To Optum

On December 14, 2018, the VA's Source Selection Authority ("SSA") issued a Source Selection Decision (the "SSA Decision") explaining the VA's decision to award the Contract to Optum.  *See generally* AR Tab 87.  In the SSA Decision, the SSA "considered the relative merit based upon a qualitative assessment of the competing proposal's characteristics, and did not simply count the relative strengths and weaknesses assigned during the evaluation process." *Id.* at 17099.  In this regard, the SSA found that Optum's proposal had a competitive advantage over the proposals of the other two offerors with regards to the Solicitation's Network Management and Claims Adjudication Subfactor and the Corporate Experience/Capability Subfactor.  *Id.* at 17096, 17098.

Specifically, the SSA determined that:

> Optum has a clear, competitive advantage for Subfactor 1.  Region 3 consists of 9 states, Puerto Rico and the Virgin Islands.  Optum has the largest network in [* * *]. . . . Optum has the largest network in [Florida] [* * *].

> Optum and TriWest both had a thorough approach while WellPoint had an

> adequate approach to building and maintaining a comprehensive network of healthcare, [Complimentary and Integrative Health Services], dental and pharmacy for [the] CCN.

*Id.* at 17094-95.  The SSA also determined that:

> The data confirmed that Optum's current, broad distribution of provider types within its robust network is aligned with [the] VA's needs, more so than TriWest and WellPoint, which is a competitive advantage.

*Id.* at 17095.  And so, the SSA concluded that:

> Because Optum has a thorough approach and a readily available network, which targets the areas with the VA's greatest needs, [the] VA has a higher level of confidence in Optum's ability to meet the CCN network adequacy standards.  This represents a clear competitive advantage over both TriWest and WellPoint in this subfactor.

*Id.* at 17096.

The SSA also determined that Optum's proposal had a competitive advantage under the Corporate Experience/Capability Subfactor, because "Optum is a mature organization with more than 30 years' experience in the healthcare market and is a Fortune 6 healthcare management company that manages larges contracts."  *Id.* at 17097.  The SSA further determined that "Optum's proposal demonstrated a greater degree of corporate maturity managing large complex healthcare networks, commercial, wholesale, and government dental programs, as well as its own [Pharmacy Benefits Management] experience of its Pharmacy Services Department with United Healthcare."  *Id.*  And so, the SSA concluded that:

> Optum, TriWest and WellPoint each have prior experience managing large healthcare contracts; however, Optum's breadth, dept and diversity of its corporate experience will provide [the] VA with guidance and expertise to fulfill its mission.  Therefore, Optum has a competitive advantage.

*Id.* at 17098.  Given these competitive advantages, the SSA also concluded that:

> Even though WellPoint's cumulative weighted score is the highest among all offerors, representing the most cost savings to the Government, I find that Optum's advantages outweigh WellPoint's lower prices and are worth the price premium.

*Id.* at 17100.  And so, the VA awarded the Contract to Optum on December 22, 2018.  AR Tab 89 at 17102.

5.      **The GAO Protest**

WellPoint filed a timely protest of the VA's award decision with the United States Government Accountability Office ("GAO") on January 22, 2019.  *See generally* AR Tab 118. On May 2, 2019, GAO denied WellPoint's protest.  *See generally WellPoint Military Care Corp.*, B415222.5, B41522.8, 2019 WL 2247569 (Comp. Gen. May 2, 2019); AR Tab 131. WellPoint commenced this post-award bid protest action on May 8, 2019.  *See generally* Compl.

## B.      Procedural Background

On May 8, 2019, WellPoint filed the complaint in this bid protest matter.  *See generally id.*  On May 8, 2019, Optum filed an unopposed motion to intervene, which the Court granted on May 10, 2019.  *See generally* Mot. to Intervene; Order, dated May 10, 2019.  On May 10, 2019, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On May 17, 2019, the government filed the administrative record.  *See generally* AR.  On May 31, 2019, WellPoint filed a motion for judgment upon the administrative record and a memorandum in support of its motion for judgment upon the administrative record.  *See generally* Pl. Mot.; Pl. Mem.  On June 14, 2019, the government and Optum filed their respective responses and oppositions to WellPoint's motion for judgment upon the administrative record and cross-motions for judgment upon the administrative record.  *See generally* Def. Mot.; Def.-Int. Mot.

On June 24, 2019, WellPoint filed a response and opposition to the government's and Optum's respective cross-motions for judgment upon the administrative record and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Resp.  On July 1, 2019, the government and Optum filed their respective reply briefs in support of their cross-motions for judgment upon the administrative record.  *See generally* Def. Reply; Def.-Int. Reply.  On July 18, 2019, the Court held oral argument on the parties' cross-motions.  *See generally* Oral Arg. Tr.

These matters having been fully briefed, the Court addresses the pending motions.

### III.    LEGAL STANDARDS

#### A.    Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).  In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA).  Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'"  *Id.* (quoting *Impresa*, 238 F.3d at 1332-33).  "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'"  *Id.* (quoting *Impresa*, 238 F.3d at 1333).  In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).  "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ."  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law."  *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## B.     Judgment Upon The Administrative Record

Unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242-43 (2011); *see* RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

## C.     Best Value Determination

This Court affords contracting officers a great deal of discretion in making contract award decisions, particularly when the contract is to be awarded to the offeror that will provide the best value to the government. *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1355-56 (Fed. Cir. 2004); *TRW, Inc. v. Unisys Corp.*, 98 F.3d 1325, 1327-28 (Fed. Cir. 1996); *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 958-59 (Fed. Cir. 1993). The Court has held that the government's best value determination should not be disturbed, if the government documents its analysis and includes a rationale for any business judgments and trade-offs made in reaching that decision. *See Blackwater Lodge & Training Center, Inc. v. United States*, 86 Fed. Cl. 488, 514 (2009). And so, a decision to award a contract is least vulnerable to challenge when that decision is

based upon a best value determination.  *PlanetSpace, Inc. v. United Sates*, 96 Fed. Cl. 119, 125 (2010).

###   D.      Injunctive Relief

Under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  In deciding whether to issue a permanent injunction, the Court "considers: (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for permanent injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1325 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate likely success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007)).  But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish that it is entitled to injunctive relief.  *See Contracting, Consulting, Eng'g*

*LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) (("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## III.    LEGAL ANALYSIS

The parties have filed cross-motions for judgment upon the administrative record on the issues of whether the VA properly evaluated responsive proposals under the terms of the Solicitation and whether the VA conducted a rational trade-off analysis and made a reasonable best value determination in connection with the award of the Contract.  *See generally* Pl. Mem.; Def. Mot.; Def.-Int. Mot.

WellPoint raises four objections to the VA's evaluation of responsive proposals in connection with this procurement.  First, WellPoint argues that the VA improperly evaluated proposals based upon an unstated evaluation criteria regarding the size of the offerors' existing provider networks.  Pl. Mem. at 8-16.  Second, WellPoint argues that the VA unreasonably and unequally evaluated proposals under the Solicitation's Corporate Experience/Capability Subfactor.  *Id.* at 16-23.  Third, WellPoint argues that the VA's trade-off analysis and best value determination were irrational and flawed.  *Id.* at 23-35.  Lastly, WellPoint argues that it is entitled to injunctive relief.  *Id.* at 35-36.  And so, WellPoint requests that the Court set aside the VA's award decision and enjoin Optum from performing the Contract.  *See id.* at 1-2.

In their cross-motions for judgment upon the administrative record, the government and Optum counter that the VA's evaluation process and award decision were reasonable and consistent with the terms of the Solicitation and applicable law.  Def. Mot. at 14-47; Def.-Int. Mot. at 7-25.  And so, they request that the Court sustain the VA's award decision.  *See* Def. Mot. at 1; Def.-Int. at 2.

For the reasons that follow, a careful review of the administrative record shows that the VA's evaluation of responsive proposals in connection with this procurement was reasonable and consistent with the terms of the Solicitation.  In addition, WellPoint has not shown that it is entitled to injunctive relief.  And so, the Court:  (1) **DENIES** WellPoint's motion for judgment upon the administrative record; (2) **GRANTS** the government's and Optum's cross-motions for judgment upon the administrative record; and (3) **DISMISSESS** the complaint.

### A.    WellPoint's Unstated Evaluation Criteria Claim Is Unsubstantiated

As an initial matter, WellPoint's claim that the VA discriminated between offerors by using unstated evaluation criteria regarding the size of offerors' existing provider networks is not substantiated by the administrative record.  Specifically, WellPoint argues that the VA improperly assigned Optum's proposal a competitive advantage under the Network Management and Claims Adjudication Subfactor based upon its existing provider network.  Pl. Mem. at 8-16. To succeed upon this claim, WellPoint must show that:  (1) the VA used a significantly different basis in evaluating the proposals than was disclosed; (2) it has been prejudiced as a result; and (3) it had a substantial chance to receive the contract award but for the VA's error.  *See Academy Facilities Mgmt. v. United States*, 87 Fed. Cl. 441, 470 (2009).  WellPoint makes no such showing here.

First, the administrative record shows that the VA did not employ a significantly different basis for evaluating proposals under the Solicitation's Network Management and Claims Adjudication Subfactor than the criteria disclosed in the Solicitation.  Rather, the administrative record makes clear that the VA may consider the size of existing provider networks when evaluating proposals under this subfactor and that the VA properly did so in this case.

In this regard, the Solicitation requires that offerors describe their approach for developing and maintaining a provider network, differentiating in the technical proposal between their existing and targeted network capacity.  AR Tab 123 at 41157.  The Solicitation also provides that "[t]he proposed [provider] network management approach . . . will be evaluated for feasibility"—indicating that a link may be found between an offeror's existing provider network and the VA's determination regarding whether a proposed provider network is feasible.  *Id.* at 41165.

Notably, the Solicitation also specifically requires that offerors provide certain data about their existing provider networks.  *Id.* at 41157 ("Include in the Technical Volume the number of current unique providers within your network by CCN Region, by State, by county . . . .").  Given this, the Court reads the Solicitation to not only permit the VA to consider the size of Optum's existing provider network, but to also make clear that the size of this existing network could be relevant to the VA's determination of whether Optum's proposed network is feasible under the terms of the Solicitation.  *Id.*; Def. Mot. at 16; Oral Arg. Tr. at 36:12-36:23.

The administrative record also shows that the VA evaluated the provider networks proposed by WellPoint and Optum for the Contract consistent with the terms of the Solicitation. In this regard, the administrative record shows that the VA evaluated Optum's proposed provider network for feasibility by assessing provider type, drive times, and appointment availability.  AR Tab 79 at 16345.  During the evaluation of Optum's proposal, the VA found that:

> Optum's approach is feasible because it demonstrates an understanding of the unique CCN healthcare challenges by leveraging geospatial analysis for drive time accessibility, appointment availability, and catchment area analysis to build the CCN healthcare network.

*Id.*  The VA similarly evaluated the feasibility of WellPoint's proposed provider network and found that:

> [WellPoint's] use of its [Network Development Project Plan] with the VA CCN development process, plus geo-mapping to support adequacy reviews, are collectively feasible because the approach incorporates VA drive times, and appointment availability standards to meet [the] VA CCN requirements.

*Id.* at 16170.  Given this evidence, the record before the Court shows that the VA properly and equally evaluated the provider networks proposed by both Optum and WellPoint to assess the feasibility of these proposed provider networks in accordance with the terms of the Solicitation.

Lastly, the administrative record also shows that the VA reasonably assigned a competitive advantage to Optum's proposal based upon Optum's proposed solution to leverage its existing provider network to perform the Contract.  *Id.* at 16345; AR Tab 84 at 17047-48, 17063; AR Tab 87 at 17095, 17097.  Optum states in its proposal that it "shows the corresponding numbers of providers and facilities in our existing network [that] we can leverage to quickly establish the VA CCN."  AR Tab 39 at 6202.  Optum also provides a detailed addendum to its proposal that shows that Optum "currently has more providers in its commercial network in Region 3 [* * *] than it estimates will be needed by CCN [* * *]."  AR Tab 84 at 17047; Oral Arg. Tr. at 58:16-59:6.  The record evidence shows that the VA's source selection advisory council considered this information and observed that Optum has the greatest number of existing networks and the most robust network located in Region 3—the geographic region for the contract at issue—when it assigned Optum's proposal a competitive advantage based upon Optum's existing provider network.  AR Tab 84 at 17063.  And so, the VA's determination that Optum's proposal provides a competitive advantage based upon Optum's existing provider

network is supported by the record evidence.  Given this, WellPoint has not shown that the VA

improperly evaluated responsive proposals under the Solicitation's Network Management and

Claims Adjudication Subfactor.[3]

### B.      WellPoint's Unequal Treatment Claim Is Unsubstantiated

WellPoint's claim that the VA's evaluation process was flawed because the agency

treated offerors unequally with respect to the evaluation of responsive proposals under the

Solicitation's Corporate Experience/Capability Subfactor is also unsupported by the

administrative record.  WellPoint argues that the VA treated it and Optum unequally during the

evaluation of this subfactor, because the VA assigned WellPoint's proposal a weakness for

lacking direct corporate experience and did not assign a similar weakness to Optum's proposal.

Pl. Mem. at 17-18.  To prevail upon this claim, WellPoint must show that this alleged evaluation

error prejudiced WellPoint in connection with this procurement.  *Bannum, Inc. v. United States*,

404 F.3d 1346, 1353 (Fed. Cir. 2005).  WellPoint makes no such showing for two reasons.

First, the record evidence shows that the VA's evaluation of proposals under the

Solicitation's Corporate Experience/Capability Subfactor did not prejudice WellPoint with

regards to the VA's award decision.  While WellPoint correctly observes that the VA assigned a

weakness to its proposal for lacking direct corporate experience, the administrative record shows

that the VA did not consider this weakness in making the agency's best value determination.  AR

Tab 87 at 17099.  Specifically, the record shows that, during the best value determination, the

VA's source selection authority "considered the relative merit based on a qualitative assessment

of the competing proposal's characteristics, and [that the VA] *did not simply count the relative*

*strengths and weaknesses assigned during the evaluation process*."  *Id.* (emphasis supplied);

Oral Arg. Tr. at 48:8-48:13.  A review of the SSA's discussion of the best value determination

also reveals that the weakness assigned to WellPoint's proposal for lack of direct corporate

experience was not included in the best value determination.  AR Tab 87 at 17099.  Indeed, the

administrative record shows that the SSA actually determined that the corporate background and

---

[3] The administrative record also makes clear that the VA did not rely solely upon Optum's existing
provider network in evaluating Optum's proposal.  The record evidence shows that the source selection
advisory council also considered Optum's approach to building and maintaining a dental/pharmacy
network and Optum's approach to claims processing and adjudication in reaching the decision to rate
Optum's proposal as "Good" for the Network Management and Claims Adjudication Subfactor.  AR Tab
84 at 17063-64.

experience of WellPoint and its corporate parent and affiliates would be of benefit to the government. *Id.* at 17098. Given this, WellPoint has not shown that the weakness for lack of direct corporate experience—even if improperly assigned— impacted the VA's best value determination and award decision in this case. *Bannum, Inc.*, 404 F.3d at 1353.

The administrative record also shows that the VA reasonably evaluated the proposals submitted by WellPoint and Optum under the Solicitation's Corporate Experience/ Capability Subfactor. AR Tab 79 at 16331-16335. The Solicitation provides that:

> The proposal content submitted in accordance with E.2.8.3. shall be evaluated to determine whether the organization [parent and affiliate(s)] has the infrastructure, experience and capabilities to manage a large, complex and comprehensive healthcare network inclusive of medical and dental providers, pharmacy benefits managements, and claims adjudication.

AR Tab 123 at 41165. The administrative record makes clear that the VA evaluated both proposals consistent with these requirements. With regards to WellPoint's proposal, the record evidence shows that the VA considered the ability of WellPoint's corporate parent and affiliates to manage a large healthcare network and, as discussed above, the VA found that this experience would be of benefit to the VA. AR Tab 87 at 17098. With regards to Optum's proposal, the record evidence similarly shows that the VA considered the experience of Optum's corporate parent and affiliates and determined that Optum's proposal showed a great degree of corporate maturity managing large healthcare networks on the part of Optum's corporate parent and affiliates. *Id.* at 17097-98. And so, the record evidence shows that the VA reasonably determined that Optum offered a competitive advantage based upon the corporate experience of its parent and affiliates. *Id.* at 17097-98.

Because the record evidence shows that the VA reasonably evaluated the responsive proposals under the Solicitation's Corporate Experience/Capability Subfactor, WellPoint also fails to prevail upon its unequal treatment claim.

### C.     The VA's Best Value Determination Was Reasonable

The Court is also unpersuaded by WellPoint's argument that the VA conducted a flawed tradeoff analysis and made an unreasonable best value determination in this case. Specifically, WellPoint argues that the VA's evaluation process was irrational because: (1) no trade-off was necessary to identify the best value; (2) the VA understated WellPoint's relative cost savings; (3)

there was no record of a rational trade-off analysis; and (4) the VA's trade-off analysis was not based upon the correct information. Pl. Mem. at 23-35. But, a careful review of the administrative record shows that the VA's trade-off analysis and best value determination were reasonable and in accordance with the terms of the Solicitation.

### 1.    A Trade-Off Analysis Was Necessary

First, WellPoint's argument that the VA did not need to conduct a trade-off analysis in this case is belied by the record evidence. Pl. Mem. at 24. The Solicitation plainly requires that the VA employ a trade-off analysis to select the awardee for the Contract. AR Tab 123 at 41163. As discussed above, the record evidence shows that the VA reasonably determined that Optum offered competitive advantages with regards to an existing provider network and corporate experience. *See* AR Tab 87 at 17099. The record evidence also shows that, despite these two competitive advantages, the VA was cognizant of the fact that Optum proposed a higher cumulative weighted score than WellPoint with regards to price. AR Tab 84 at 17081; AR Tab 87 at 17100. Given this, the VA appropriately conducted a trade-off analysis of the responsive proposals to determine which proposal offered the best overall value to the government, in accordance with the Solicitation.[4] AR Tab 84 at 17080-81.

### 2.    The VA's Methodology For Calculating Price Was Reasonable

WellPoint's claim that the VA incorrectly evaluated the relative cost savings offered by WellPoint and Optum is also unsupported by the administrative record. Pl. Mem. at 24-28. As discussed above, the Solicitation requires that the VA evaluate the Price Factor based upon a cumulative weighted score. AR Tab 123 at 41167. As the government persuasively argued during oral argument, the record evidence shows that VA's methodology for evaluating price in connection with this procurement was both reasonable and in accordance with the terms of the Solicitation. Oral Arg. Tr. at 40:13-40:19 ("[A]t the end of the day, what the Government chose to do was rational and consistent with the terms of the Solicitation . . . .").

---

[4] WellPoint's argument that the administrative record does not show that the VA provided a rational basis for its trade-off analysis is also not supported by the administrative record. Pl. Mem. at 29-32. The administrative record contains detailed technical evaluation and price evaluation team reports that thoroughly explain and document the strengths and weaknesses that the VA found with regards to the three responsive proposals received by the agency. *See generally* AR Tabs 79, 82. The administrative record also contains a detailed explanation of how the VA calculated the cumulative weighted price scores assigned to WellPoint and Optum. *See generally* AR Tab 82.

The record evidence shows that the VA's PET evaluated the unit prices proposed by each offeror for the base period and all option periods for the Contract, as required by Sections E.5.10 through E.5.10.6 of the Solicitation.  AR Tab 82 at 16922.13-.14; AR Tab 123 at 41167.  The record evidence also shows that the VA's SSA compared each offerors' cumulative weighted score with the Independent Government Cost Estimate for the Contract during the trade-off analysis.  AR Tab 87 at 17099; *see also* AR Tab 123 at 41167.  Based upon this analysis, the VA found that "WellPoint's score represents . . . a 5.430% additional cost savings over what Optum proposed . . . ." and that "Optum's score represents less cost savings resulting in a higher price over WellPoint . . . ."  AR Tab 84 at 17080.

WellPoint contends that the VA's evaluation of price was flawed because the agency should have calculated the government's cost savings in a different manner.  Pl. Mem. at 24-28; *see e.g.*, Oral Arg. Tr. at 10:7-11:5 (suggesting that the VA should have calculated the percent difference of the two offerors' cumulative weighted scores).  But, the Court's inquiry here is not whether the VA employed the best methodology available to evaluate price, but whether the VA's price evaluation methodology was reasonable and in accordance with the terms of the Solicitation.  *See e.g.*, *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).  Because the record evidence shows that the answer to that inquiry is yes, WellPoint's claim lacks merit.

### 3.    The VA's Trade-Off Analysis Was Based Upon Accurate Information From WellPoint's Proposal

Lastly, WellPoint raises five unpersuasive arguments to show that the VA relied upon incorrect information during the trade-off analysis.[5]

First, WellPoint argues that the VA's SSAC failed to report a strength that the TET identified in WellPoint's proposal related to dental network.  Pl. Mem. at 32-33.  But, the administrative record show that the SSAC decided to remove this strength and that the TET

---

[5] During oral argument, WellPoint admits that these arguments, standing alone, would not warrant setting aside the VA's award decision.  Oral Arg. Tr. at 78:15-78:16.

concurred with this decision.[6]  AR Tab 79 at 16203-04.

WellPoint's argument that the SSAC improperly removed a strength from WellPoint's proposal regarding claims processing approach is also unsubstantiated.  Pl. Mem. at 33-34.  The administrative record shows that the VA reasonably removed this strength because WellPoint's proposal does not expressly state that its medical and dental providers can enter claims data into an online form—a capability that the VA does not currently have.  AR Tab 84 at 17060; *see also* AR Tab 78 at 15550-51.  And so, WellPoint's first two objections are not substantiated by the record evidence.

WellPoint also unpersuasively argues that the VA's trade-off analysis was flawed because the VA improperly reported a weakness related to WellPoint's claims processing approach.  Pl. Mem. at 34.  Even if it is true that the VA erred in reporting this weakness, WellPoint does not explain how it has been prejudiced by this error.  As discussed above, the record evidence makes clear that the VA did not consider this weakness in connection with the best value determination in this case.  AR Tab 93 at 17268; *see also* AR Tab 87 at 17099.  And so, WellPoint has not shown that its claim is meritorious.

WellPoint's argument that the VA improperly assigned a strength to Optum's proposal for the approach to short notice changes—and failed to assign a strength to WellPoint's proposal for offering the same approach to short notice changes—is similarly unsubstantiated by the administrative record.  Pl. Mem. at 34-35.  The administrative record makes clear that WellPoint and Optum did not propose similar approaches to short notice changes.  *Compare* AR Tab 76 at 14072 (the record evidence shows that Optum articulated three ways to respond to short change notices, namely by:  [* * *], *with* AR Tab 78 at 15509 (the record evidence shows that WellPoint proposed two ways to respond to short change notices, namely:  (1) single case agreements and (2) letters of agreement).

---

[6] The relevant paragraph in the TET's report provides that:

> The SSAC determined that [WellPoint's dental network] does not meet the definition of a Strength because [WellPoint] does not provide specific details on the coverage in Region 3.  The TET agrees with the SSAC's determination and rationale to remove the strength based on the initial and [final proposal revisions].

AR Tab 79 at 16203-04 (italics omitted).

Lastly, WellPoint's argument that the VA erred in reporting a strength that the TET assigned to Optum's proposal under the Solicitation's Management Approach Subfactor for "[* * *]" is also unsubstantiated.  Pl. Mem. at 35; AR Tab 79 at 16457.  WellPoint argues that the SSA improperly reassigned this strength from the Solicitation's Network Management and Claims Adjudication Subfactor to the Management Approach Subfactor.  AR Tab 84 at 17046-48.  But, the record evidence shows that the VA appropriately reported this strength under the Solicitation's Network Claims and Adjudication Subfactor.[7]  *Id.* at 17047.

### D.    WellPoint Is Not Entitled To Injunctive Relief

As a final matter, WellPoint is not entitled to the injunctive relief that it seeks in this case. WellPoint requests, among other things, that the Court enjoin Optum from performance under the Contract.  Compl. at Prayer for Relief.  But, a plaintiff who cannot demonstrate success upon the merits cannot prevail on a motion for permanent injunctive relief.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).  In this case, WellPoint has not succeeded upon the merits of any of its claims challenging the VA's evaluation of proposals and award decision.  And so, the Court must **DENY** WellPoint's request for injunctive relief.

## IV.    CONCLUSION

In sum, WellPoint has not shown that the VA's evaluation of proposals in connection with the Contract was arbitrary, capricious, or contrary to law.  Rather, the government has demonstrated that the VA conducted a reasonable evaluation, reasonably found that Optum presented the best value to the government, and that the VA made a sound decision to award the Contract to Optum.

And so, for the foregoing reasons, the Court:

1.    **DENIES** WellPoint's motion for judgment upon the administrative record;

---

[7] The administrative record shows that the VA's TET report contains a typographical error that mistakenly attributes this strength to the Solicitation's Management Approach Subfactor.  *Id.* at 17046; *see also id.* at 17048 (showing no mention of Optum's pharmacy network in the SSAC's discussion of the Management Approach Subfactor).  The administrative record also shows that the VA corrected this error and properly attributed the subject strength to the Solicitation's Network Management and Claims Adjudication Subfactor.  *Id.* at 17046-48 ("[* * *].  This strength was moved from Subfactor 2 [the Network Management and Claims Adjudication Subfactor].").

2. **GRANTS** the government's and Optum's cross-motions for judgment upon the administrative record; and

3. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on May 10, 2019. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **September 3, 2019**.

      **IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge